UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MELISSA WHEELER,                    No. CIV. S 03-2090 MCE GGH

          Plaintiff,

  v.                                MEMORANDUM AND ORDER

CSK AUTO, INC., and DOES 1-100, Inclusive,

          Defendants.

----oo0oo----

Plaintiff Melissa Wheeler, a former employee of Defendant CSK Auto, Inc.[1] ("CSK"), challenges the events surrounding her termination by CSK through the present lawsuit. Plaintiff raises five causes of action in her complaint: (1) sex discrimination under California's Fair Employment and Housing Act (FEHA), (2)

---

[1] In California, CSK Auto, Inc. operates under the name "Kragen Auto Parts."

1

wrongful termination (breach of contract), (3) wrongful termination in violation of public policy, (4) defamation, and (5) failure to compensate all hours worked.

Wheeler originally filed her complaint in state court. CSK removed to the case to this Court based on diversity of citizenship under 28 U.S.C. §§ 1332 and 1441(b). Presently before the Court is CSK's motion for summary judgment or, in the alternative, for summary adjudication. For the reasons stated below, CSK's motion for summary judgment is granted.[2]

**BACKGROUND**

**1. At-will Employment**

On July 27, 1997, CSK hired Wheeler as a cashier at its Fairfield, California store. Wheeler's application for employment included a provision, which she signed, acknowledging that she would be an at-will employee and that either she or CSK could terminate her employment at any time and with or without cause.[3] (Wheeler Dep. Exhibit 9). The application's at-will provision also stated that employment terms could only be changed by a written agreement with CSK's president. (Wheeler Dep. Exhibits 7,9).

---

[2] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

[3] In 1998, when requesting a transfer, Wheeler signed a second at-will employment provision that was part of the application for employment. (Wheeler Dep. Exhibit 8).

2

    Once hired, Wheeler attended an orientation meeting where she received a copy of CSK's Conduct of Associates[4] along with the Associate Handbook. The Conduct of Associates included a brief description of CSK's at-will employment policy. The Associate Handbook also included the at-will employment policy as well as a form that employees are required to sign acknowledging that their employment with CSK is at-will. Wheeler signed this form and a checklist acknowledging that she had received a copy of the Conduct of Associates and the Associate Handbook and that a supervisor had thoroughly discussed the policies contained therein. (Wheeler Dep. 121:16-122:3; Wheeler Dep. Exhibit 10).

    In April of 2001, CSK promoted Wheeler to store manager at its Antioch, California store. In March 2003, Wheeler was transferred to CSK's Fulton/Cottage store in Sacramento, California. As store manager, Wheeler was responsible for supervising, training, hiring, and firing clerks. In particular, Wheeler was responsible for training each new hire on the materials contained in CSK's new hire packet. This packet included CSK's Associate Handbook and the Conduct of Associates, which, as enumerated above, set forth CSK's policy of at-will employment. Wheeler was also responsible for obtaining the signed acknowledgment form of CSK's at-will policy from each new employee.

//
//

---

[4]Conduct of Associates is a brief description of CSK's polices and procedures.

**2. CSK's Sick Leave Policy**

CSK provides sick leave, vacation time, and personal days for its employees. Sick leave and personal days are distinguishable from vacation time in that they are not vested benefits and are not paid out to employees upon termination. CSK's sick leave policy states that sick leave is only to be used "when an injury of the associate prevents the associate from coming to work." (Wheeler Dep. Exhibit 4; Adam Decl. ¶15; Roscoe Decl. ¶5). The sick leave policy is included in CSK Operations Manual and is made available to employees online. (Wheeler Dep. 34:5-15, 35: 13-16; Wheeler Dep. Exhibit 4).

While employed as store manager at CSK's Fulton/Cottage store in Sacramento, it is undisputed that Wheeler used sick leave to supplement employees' hours for non-illness related absences. On Sunday June 8, 2003, Wheeler called Leonard ("Skip") Shields, her First Assistant Manager, and asked if he could assist her boyfriend, Francisco Mejia, in repairing her car. Shields agreed to help Mejia repair Wheeler's car that day but they were unable to finish the repair. Shields offered to complete the repair on his next scheduled day off but Mejia could not secure that day off from work. Wheeler then offered Shields Monday, June 9, 2003, off work so Shields could help Mejia finish repairing her car.

Wheeler used sick leave to pay Shields for the eight hours of work on Monday, June 9, 2003 that Shields missed while he was assisting Mejia in repairing her car. Later that week, on June 12, 2003, Wheeler again used sick leave to supplement Shields' hours after Shields attended a training meeting. Wheeler asked

4

Shields if he wanted to go home early because another employee had requested additional hours. Wheeler then gave Shields the night off and paid him five hours of sick leave.

Wheeler admits that when an employee took time off for a non-illness related reason she would exhaust the employee's personal days and sick leave before using vacation time. (Wheeler Dep. 152:15-153:2). Wheeler also admits that she knew that employees would lose their personal days and sick leave if they did not use them. (Wheeler Dep. 152:17-23).

### 3. CSK Investigation on Wheeler's Use of Sick Leave

Wheeler's practice of using sick leave to pay employees for non-illness related time off was brought to CSK's attention after an employee requested and was denied a sick day. Steve McCall, the Fulton/Cottage store's Assistant Manager, called Wheeler on June 10, 2003 to request the day off because he had injured his arm over the weekend. Wheeler denied McCall's request.

On June 12, 2003, McCall overheard a conversation between two employees who stated that Wheeler had given Shields Monday, June 9, 2003 off so that Shields could assist Mejia in repairing her car and that she had used sick leave to compensate Shields for his time off. McCall made a complaint against Wheeler to CSK's Regional Human Resource Manager Bret Adam based on his belief that he had been denied the day off because Shields had received June 9 off.

Adam and CSK loss prevention agent, Dave Fullerton, conducted an investigation into Wheeler's use of sick leave. Adam and Fullerton interviewed Wheeler as well as McCall and Shields.

In addition to confirming his earlier allegations, McCall informed Adam and Fuller that Wheeler had been supplementing his regular work hours with sick leave when his hours were cut back due to slow business.

In her interview, Wheeler admitted that she had used sick leave to supplement employees' hours for non-illness related time off. (Wheeler Dep. Exhibit 14; Adam Decl. ¶13). Wheeler also admitted to paying Shields eight hours of sick leave for the day he missed work to help Mejia fix her car and for the day he left early after a training meeting (Wheeler Dep. 148:21-149:13; Wheeler Dep. Exhibit 14; Adam Decl. ¶¶11-13).

In his interview, Shields confirmed that Wheeler gave him Monday June 9, 2003 off work so that he could help Mejia repair Wheeler's car and that Wheeler had paid him eight hours of sick leave for that day. (Wheeler Dep. Exhibit 14; Adam Decl. ¶¶10, 12). Shields also confirmed that Wheeler had paid him five hours of sick leave for the evening of June 12, 2003 that she had given him off work. (Wheeler Dep. Exhibit 14; Adam Decl. ¶¶10, 12).

On July 3, 2003, Adam and Fullerton, along with District Manager Phillip Kuhn, Divisional Asset Protection Manager Jay Plassmeyer, Regional Vice President Ken Roscoe, Senior Human Resources Manager Sonya Granillo-Cathey, and Assistant General Counsel James Wigle reviewed the investigation report and discussed the appropriate level of discipline for Wheeler. After receiving input and recommendations from the Legal, Human Resources, and Loss Prevention Departments, Roscoe and Kuhn decided to terminate Wheeler's employment for misuse of CSK's sick leave policy and for falsifying documents. CSK also

6

terminated Shields and McCall for misuse of CSK's sick leave policy and for falsifying documents.

## STANDARD

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). According to Federal Rule of Civil Procedure 56(c),[5] summary judgment is proper where no genuine issue of material fact exists. The moving party may demonstrate that no genuine issue of material fact exists by showing "an absence of evidence to support the nonmoving party's case." Celotex Corp. V. Catrett, 477 U.S. 317, 325 (1986). Once the moving party satisfies these requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). In evaluating evidence at the summary judgment stage, the court does not weigh conflicting evidence. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-631 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. Fed. R. Civ. P. 56(a). The standard that applies to a motion for summary adjudication is the same as

---

[5] Unless otherwise stated, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

7

that which applies to a motion for summary judgment. <u>Mora v. ChemTronics</u>, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

## ANALYSIS

**1. Failure to Timely Oppose Motion for Summary Judgment**

Local Rule 78-230(c) requires that the opposition to a motion be filed "not less than fourteen (14) days preceding the noticed . . . hearing date." The Court has discretion to disregard papers filed after a filing deadline. <u>See</u> <u>Pfeil v. Rogers</u>, 757 F.2d 850, 858 (7th Cir. 1985), cert. denied, 475 U.S. 1107 (1986)("The filing deadline . . . assures the court . . . that its decisions will be accurate because the issues will have been fully briefed"), cited with approval by <u>Ashton-Tate Corp. v. Ross</u>, 916 F.2d 516, 520 (9th Cir. 1990). Moreover, Rule 56(e) requires the party opposing summary judgment to present evidence showing there is a genuine issue of material fact. <u>See</u> <u>also</u> E.D. Cal. Local Rule 56-260 (requiring the party opposing a motion for summary judgment to file "all evidentiary documents cited in the opposing papers.").

The hearing for CSK's motion for summary judgment was originally set for June 6, 2005. On May 17, 2005, Wheeler requested a continuance and on May 23, 2005 the hearing date was reset for June 20, 2005. On June 16, 2005, four days before the hearing date and ten days after opposition was due, Wheeler filed an opposition to Defendant's motion for summary judgment as to her claim that she was not compensated for all hours worked. On June 17, 2005, Wheeler filed her response to Defendant's

8

undisputed facts in support of the motion for summary judgment. On June 20, 2005, the date set for the hearing on the motion for summary judgment, Wheeler filed an additional opposition addressing the sex discrimination and wrongful termination based on violation of public policy claims. In addition to her untimely filings, Wheeler failed to file any of the evidentiary documents cited in her opposition papers.

Because Wheeler neglected to adequately and timely oppose CSK's motion for summary judgment, the Court strikes the oppositions filed June 16 and 20, and the response to the statement of undisputed material facts filed June 17, 2005.

On June 9, 2005, citing the Court's December 10, 2003 Scheduling Order, CSK requested that the Court treat Wheeler's failure to oppose as consent to the motion. (CSK's Reply at 2). Irrespective of Plaintiff's failure to submit a timely opposition, however, the Court nonetheless cannot grant summary judgment in favor of the defense unless it deems it appropriate to do so following examination of the evidence and arguments submitted. Martinez v. Stanford, 323 F.3d 1178, 1182-83 (9th Cir. 2003). The Scheduling Order provides that failure to timely oppose a summary judgment motion "may result in the granting of that motion *if the movant shifts the burden to the nonmovant to demonstrate that a genuine issue of material fact remains for trial*." (Scheduling Order, Dec. 10, 2003 at 5) (emphasis added). Thus, even if the nonmoving party has failed to timely oppose, the Court must nevertheless determine whether the moving party has met its burden of showing that there is no genuine issue of material fact for trial. Martinez, 323 F.3d at 1182-83.

**2. Plaintiff's Individual Claims**

    **a. Sex Discrimination**

When analyzing a discrimination claim under FEHA, the allocation of burdens of proof and order of analysis follow the three step pattern established by the Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792 (1973).[6] Plaintiff must first establish a prima facie case by showing that 1) she belongs to a protected class; 2) that she was performing her job satisfactorily; 3) that she was terminated, rejected for employment, or otherwise subjected to a tangible employment action; and 4) that this took place under circumstances giving rise to an inference of unlawful discrimination. See Id. at 802; see also Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

If the Plaintiff succeeds in establishing a prima facie case as outlined above, the burden shifts to the Defendant to articulate a legitimate, non-discriminatory reason for the adverse action taken. McDonnnell Douglas, 411 U.S. at 802. If the Defendant satisfies that burden, the Plaintiff must then show that the reason proffered by the Defendant was merely a pretext for discrimination. Id. at 804.

Wheeler claims she was terminated because of her sex. Her claim is based on allegations that male store managers used sick leave in the same manner she did but were not terminated, that only three out of nineteen store managers in the district where

---

[6] California has adopted the McDonnell Douglas burden-shifting test for discrimination claims. Guz v. Bechtel Nat'l, Inc., 24 Cal.4th 317, 354 (2000).

10

she was employed were female, that CSK paid higher salaries to male employees than it did for similarly situated female employees, that CSK did not hire females for certain job positions, and that CSK used a higher standard and additional criteria in its promotion of female store managers. (Wheeler Compl. ¶51).

CSK asserts that Wheeler cannot meet her burden of establishing a prima facie case of discrimination. It claims that Wheeler cannot show that she was performing her job satisfactorily or that she was treated differently than other male store managers. However, the burden of establishing a prima facie case is not an onerous one. Burdine, 450 U.S. at 253. CSK has not shown that, prior to its investigation into her use of sick leave, Wheeler was not performing her job satisfactorily. In addition, Wheeler's declaration that she believed male store managers were treated differently is sufficient to satisfy the low prima facie burden.

We next turn to whether CSK has met its burden of showing that it had a legitimate, non-discriminatory reason for terminating Plaintiff. CSK has shown that it had an established sick leave policy. Sick leave was to be used to compensate employees for illness related absences. Wheeler violated this policy by using sick leave to compensate employees for leaving work early and taking days off for non-illness related reasons. Wheeler admitted she used sick leave in this manner in both her deposition and throughout CSK's investigation into the matter. CSK terminated Wheeler after a thorough investigation determined that she had violated CSK's sick leave policy. As a result of

11

that same investigation, CSK also terminated two male employees, Shields and McCall, for violating the sick leave policy and for falsifying time records.

CSK provided enough evidence to meet its burden by showing that it had a legitimate, non-discriminatory reason for terminating Wheeler. There is no evidence that Wheeler was terminated for anything other than misusing CSK's sick leave policy and falsifying documents. Thus, the burden shifted to Wheeler to show that CSK's reason for terminating her employment was pretextual. Because Wheeler failed to raise pretext in opposition, she did not meet her burden. Accordingly, grant of summary judgment on Wheeler's claim for gender discrimination is appropriate.[7]

**b. Wrongful Termination (Breach of Contract)**

Most California cases have held that an express at-will employment provision cannot be contradicted by proof of an implied contrary understanding. Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 340 n.10 (2000). Thus, an at-will provision in an express written agreement stating that the employer can terminate the employee at any time with or without cause cannot normally be overcome by proof of an implied agreement to terminate for good cause. Starzynski v. Capital Public Radio, Inc., 88 Cal. App. 4th 33, 37 (2001).

On two separate occasions Wheeler signed an express at-will

---

[7] In its motion for summary judgment, Defendant addresses Plaintiff's disparate pay claim in the context of gender bias. However, the Court need not address this issue since Plaintiff's complaint of sex discrimination is solely based on her termination. (Complaint ¶¶47, 51, 53, 54).

12

1 employment provision that was part of CSK's employment
2 application. California courts disagree as to whether an at-will
3 provision in an application for employment constitutes a valid
4 express contract. Compare Harden v. Maybelline Sales Corp., 230
5 Cal. App. 3d 1550, 1555 (1991), with Wallis v. Farmers Group,
6 Inc., 220 Cal. App. 3d 718, 730 (1990). However, Wheeler also
7 signed the at-will acknowledgment form contained in CSK's
8 Associate Handbook given to her after she was hired. Moreover, as
9 store manager, she was responsible for ensuring that new hires
10 signed the at-will acknowledgment form.
11      Wheeler claims that she had an implied contract of
12 employment with CSK that the termination of her employment could
13 only be for "good cause." Wheeler bases her contention on the
14 fact that she received several promotions during the time she was
15 employed by CSK. In addition, she claims that policies in the CSK
16 operations manual created self-imposed limitations for
17 discharging employees, thereby implying termination only for
18 "good cause." (Wheeler's Complaint ¶11).
19      CSK established that it had an express at-will employment
20 agreement with Wheeler. CSK has provided the Court with three
21 documents signed by Wheeler acknowledging that her employment was
22 at-will and could be terminated at any time with or without
23 cause. Thus, Wheeler cannot contradict this express agreement
24 with proof of an implied agreement to terminate for good cause.
25 However, even if there had been implied contract to terminate for
26 good cause, good cause was present. Wheeler has not established
27 that her termination was arbitrary or pretextual. Accordingly,
28 summary judgment on Wheeler's claim for breach of contract is

13

also appropriate.

### c. Wrongful Termination (Violation of Public Policy)

An employer's right to terminate an at-will employee is subject to limits imposed by public policy. Foley v. Interactive Data Corp., 47 Cal. 3d 654, 665 (1988). Wheeler's wrongful termination claim in violation of public policy is based on her sex discrimination claim. Because Wheeler failed to meet her burden on her sex discrimination claim, there is no basis for her public policy violation claim and grant of summary judgment is appropriate.

### d. Defamation

To establish a defamation claim, Wheeler must show that the communication complained of was published, false, and unprivileged. Cal. Civ. Code § 46. Truth and privilege are both defenses to a defamation claim. Campanelli v. Regents of Univ. of California, 44 Cal. App. 4th 572, 582-83 (1996); Cal. Civ. Code § 47(c).

Wheeler's defamation complaint stems from a statement Don, a human resources manager for CSK, made to Chuck Amalong, a CSK district manager, who then relayed the statement to Wheeler's sister, also a CSK employee. Wheeler claims Don told Amalong, who then told her sister, that she was terminated for violating company policy and for having an associate work on her car.(Wheeler Dep. 295:16-296:3).

CSK claims that Wheeler's defamation claim must fail because the statements regarding her termination were true. CSK further contends that the statements are privileged under California Civil Code § 47(c). (A communication made by an employee to

14

another employee is subject to a qualified privilege if it is made, without malice, to a person interested in the communication. See Deaile v. General Tel. Co., 40 Cal. App. 3d 841, 846-47 (1974). However, the conditional privilege can be defeated if the plaintiff specifically alleges malice. Williams v. Taylor, 129 Cal. App. 3d 745, 752 (1982).

CSK provided sufficient evidence to show that the communication was true: Wheeler was terminated for violating CSK's sick leave policy. In addition, because the communication was between two CSK employees who had an interest in the circumstances of Wheeler's termination, the communication also falls within a qualified privilege. Moreover, Wheeler cannot defeat the qualified privilege because she did not specifically allege malice in her complaint and failed to allege it in opposition. Accordingly, summary judgment on Wheeler's claim for defamation is also appropriate.

### f. Failure to Compensate All Hours Worked

Wheeler claims that CSK did not fully compensate her for the hours she worked on her last pay period. CSK contends that it did not receive an accurate account of Wheeler's hours when it issued her last pay check but that, once it became aware of the inaccuracy, it promptly paid Wheeler the amount she was owed. (Adam Decl. ¶16). Because there is no opposition as to whether Wheeler was fully compensated, summary adjudication on her claim for failure to compensate all hours worked is appropriate.

//

//

**CONCLUSION**

For the reasons stated above, CSK's motion is GRANTED in all respects. Judgment shall accordingly be entered in favor of CSK and the Clerk is directed to close this file.

IT IS SO ORDERED.

DATED: August 10, 2005

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE